# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENYASHA BURRELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security,[1] ) <br> ) <br> Defendant. ) <br> ) | No. 16 CV 3480 <br><br> Magistrate Judge <br> Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security (the "Commissioner") denying Claimant Kenyasha Burrell's claim for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Claimant has moved for summary judgment (Dkt. No. 15), asking that the court reverse the decision of the Administrative Law Judge ("ALJ"). The Commissioner has responded (Dkt. No. 23), arguing that the decision of the ALJ should be affirmed. For the reasons that follow, Claimant's motion for summary judgment is granted and the Commissioner's request for summary judgment is denied.

## I. BACKGROUND

### A. Procedural History

On November 5, 2012, Kenyasha Burrell ("Claimant"), a minor at that time, protectively filed an application for SSI alleging disability as of December 1, 2010 due to

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

epilepsy.[2] (R. 59, 137-42.) The claim was denied initially on May 22, 2013. (R. 59-69, 73-79.) On June 27, 2013, Claimant requested a hearing before an ALJ. (R. 80-82.) At that hearing, held on June 24, 2014, Claimant appeared with her mother, Coretha Burrell, and was represented by counsel. (R. 39-58.) Claimant's mother testified on her daughter's behalf. (*Id.*) On August 26, 2014, the ALJ issued an unfavorable written decision. (R. 15-32.) Claimant filed a timely request for review. (R. 13-14.) When the Appeal's Council denied Claimant's request on January 20, 2016, (R. 1-3), the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481. This action followed.

**B. Medical Evidence**

**1. Treating Physicians**

On April 8, 2013, Claimant's treating neurologist, Amy Brooks-Kayal, M.D., completed a Childhood Disability Evaluation form regarding Claimant's functioning within six domains. (R. 210-211.) She concluded that Claimant exhibited marked limitations in three domains: acquiring and using information, interacting and relating with others, and health and physical well-being. (R. 210.) She referenced her treatment notes to support her opinions. (R. 211.)

Another treating physician, Abdul Mazin, M.D., completed a Seizures Residual Functional Capacity Questionnaire on June 8, 2014. (R. 495-98.) Dr. Mazin indicated that he treated Claimant since March 5, 2014 and based his opinion on his examinations, imaging studies, and symptom reports. (R. 498.) He diagnosed Claimant with epilepsy and indicated that Claimant suffers from two to three seizures per week and experiences a loss of consciousness during her seizures. (R. 495.) He

---
[2] Claimant, born January 15, 1997, turned 18 after the ALJ's decision in this case. (R. 59.)

reported that Claimant was compliant with her medications; and that she experienced depression and a short attention span resulting from her seizures. (R. 496.)

### 2. Agency Consultants

On April 9, 2013, state agency psychologist, Amy Crockett, Ph.D., conducted a psychological evaluation consisting of a clinical interview, a mental status exam and a review of school records. (R. 203-08.) She diagnosed Claimant with adjustment disorder with mixed disturbance of emotions and conduct, depressive disorder not otherwise specified, and she assigned Claimant a Global Assessment of Functioning ("GAF") score of 62.[3] (R. 207.) Dr. Crockett concluded that Claimant had marked impairments in her persistence in completing tasks and in sustained concentration; marked impairments in her ability to accept instruction or criticism and respond appropriately to others in a school setting; moderate to marked impairments in her ability to maintain a schedule and regular, punctual attendance; and moderate impairments in her flexibility, adaptability, and ability to tolerate school-related stressors. (R. 206-07.)

On May 22, 2013, as part of an initial disability determination, state agency psychologist, James J. Wanstrath, Ph.D., and medical consultant, Chrys Synstegard, M.D., reviewed Claimant's medical records and completed a functional equivalence analysis. (R. 59-69.) Drs. Wanstrath and Synstegard found that Claimant suffered from severe epilepsy and affective disorders. (R. 64.) They concluded that Claimant had

---

[3] The Global Assessment of Functioning ("GAF") is a system used to score the severity of psychiatric illness, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/ (last visited on January 31, 2017). According to the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Rev. 2000) at page 34, a GAF between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV-TR (4th Ed. Text Rev. 2000) at 34.

3

"less than marked" limitations in the first five domains but exhibited "marked" limitation in the sixth domain of health and physical well-being due to seizures.  (R. 65-66.)

### 3. School Records

On February 6, 2013, an unnamed math teacher and Claimant's school nurse, Robert Williams, M.S., B.S.N., R.N., filled out a Teacher Questionnaire at the request of the state agency, asking for ratings and comments on Claimant's functioning within the six domains for evaluating disability in children.  (R. 173-80); *See* 20 C.F.R § 416.926a(g)-(1).  The math teacher filled out the questionnaire regarding the first five domains, after teaching Claimant for two hours a day for the previous one and a half years.  (R. 173.)  In the first domain of acquiring and using information, the math teacher rated three of the ten areas as obvious problems, noting that her difficulties derive from "absenteeism," her "unsatisfactory progress" in previous academic years, and "lack of focus or motivation."  (R. 174.)  In the second domain of attending and completing tasks, the math teacher found six of the thirteen areas assessed to be either serious (4) or very serious (5) problems, many of which are experienced daily.  (R. 175.)  The math teacher again indicated a lack of "focus" and "a hard time concentrating" as the basis for her difficulties.  (*Id.*)  In the third domain of interaction and relating with others, the math teacher opined to nine of the thirteen areas as either serious (4) or very serious (5) problems.  (R. 176.)  The math teacher indicated that behavior modification strategies were regularly necessary to help Claimant refocus.  (*Id.*)  In the fourth domain of moving about and manipulating objects, no problems were indicated.  (R. 177.)  In the fifth domain of caring for herself, three of the ten categories were assessed as serious (4) or very serious (5) problems.  (R. 178.)  The math teacher

4

noted Claimant "has outbursts and can, at times, handle frustration inappropriately." (*Id.*)  The school nurse, Mr. Williams, filled out the questionnaire on the final domain of health and physical well-being.  (R. 179.)  Mr. Williams indicated that Claimant suffered from seizure disorder and that Claimant was compliant with her medications, but had had some trouble adjusting to the new medication regimen.  (*Id.*)

### C. Hearing Testimony

At the June 24, 2014 administrative hearing, Claimant's mother, Coretha Burrell, testified on behalf of her daughter.  (R. 34-58.)  Ms. Burrell testified that Claimant had epilepsy and seizures since 2009.  (R. 41.)  She indicated that Claimant had seizures three to four times per week, lasting between five and forty-five minutes.  (R. 53-54.)  Ms. Burrell reported that Claimant took anticonvulsant medications for seizures and ibuprofen for headaches.  (R. 42-43.)  She testified that Claimant had side effects from the medications including "confusion, trouble concentrating, memory problems, anxiety, depression, tiredness."  (R. 43.)  She indicated that her daughter had problems with memory, concentration and had headaches that required her to lie down.  (R. 51-55.)  Ms. Burrell asserted that Claimant received poor grades in school and took online courses because of her struggling grades, bullying and concentration issues in regular classes.  (R. 46, 50.)  Ms. Burrell testified that Claimant was frequently absent from school due to seizures.  (R. 51.)

## II. ANALYSIS

### A. Standard of Review

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review.  *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000).

5

Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B. Analysis under the Social Security Act**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act ("SSA") and regulations. A child is disabled if he or she has a "physical or mental impairment, which results in marked and severe functional limitations, and... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The SSA employs a three-step analysis to decide whether a child meets this definition. 20 C.F.R. § 416.924. First, if the child is engaged in substantial gainful activity, his or her claim is denied. (*Id.*) Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. (*Id.*) Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings of Impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

To determine if an impairment is functionally equivalent to a listing, an ALJ analyzes the severity of the impairment in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). To functionally equal the listings, the ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. 20 C.F.R. § 416.926a(d). An "extreme" limitation occurs when the impairment interferes very seriously with the claimant's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).

**C. ALJ's Determination**

Here, the ALJ found that: (1) Claimant was born on January, 15 1997 and was in the "adolescent" child category when she applied for disability benefits and at the time of the hearing; (2) Claimant has not engaged in substantial gainful activity since the November 5, 2012 application date; (3) Claimant suffers from the severe impairments of epilepsy and headaches; (4) Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings; and (6) Claimant has not been disabled, as defined in the SSA, since the date the application was filed. (R. 21-31.)

To support her determination, the ALJ summarized Claimant's symptoms as reported by Claimant's mother and as reported to various medical professionals. (R. 22-23.) The ALJ concluded that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 23.)

The ALJ also summarized the opinions of various doctors who examined Claimant or reviewed the medical record. (R. 24-26). The ALJ accorded "great weight" to the opinions of state agency psychologist Dr. James Wanstrath and state agency medical consultant Dr. Chrys Synstegard, "since they are consistent with the bulk of the medical evidence." (R. 25-26.) Regarding the opinion of state agency psychologist Dr. Crockett, the ALJ "gave substantial weight" to Dr. Crockett's GAF score "since it is supported by Dr. Crockett's objective exam findings." (R. 25.) By contrast, the ALJ

8

gave "less weight" to the other limitations opined by Dr. Crockett "because they appear to be contradicted by Dr. Crockett's evaluation results and by Dr. Crockett's GAF score." (*Id.*) Similarly, the ALJ accorded "little weight" to the opinions of treating neurologist, Dr. Brooks-Kayal, "since they are inconsistent with Dr. Brooks' treatment records." (R. 24.) With regards to Dr. Mazin's opinion, the ALJ indicated that she "does not know how much weight" to give to the form inquiring about adult functional limitations, but nonetheless found Dr. Mazin's assessment to be "inconsistent with a finding of disability." (R. 26.)

In challenging the ALJ's decision, Claimant now argues that the ALJ's functional equivalency assessment was not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred by: (1) improperly weighing the opinion of Claimant's treating neurologist, Dr. Brooks-Kayal; (2) failing to properly weigh the teacher questionnaire from Claimant's math teacher and school nurse; and (3) improperly formulating the functional equivalence analysis without guidance from any examining opinion.

### D. The ALJ improperly weighed the opinion of Claimant's treating neurologist, Dr. Brooks-Kayal.

In evaluating a claim of disability, an ALJ "must consider all medical opinions in the record." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b). The opinion of a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because of a treating doctor's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart,* 345

9

F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer 'good reasons' for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also See Stage v. Colvin,* 812 F.3d 1121, 1126 (7th Cir. 2016). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Campbell,* 627 F.3d at 306.

Even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ improperly discounted the opinion of Dr. Brooks-Kayal. It is undisputed that Dr. Brooks-Kayal is Claimant's treating neurologist. The ALJ herself recognized that Claimant received treatment from Dr. Brooks-Kayal for epilepsy and headaches from 2012 to 2014. (R. 24.) However, the reason the ALJ gave to reject Dr. Brooks-Kayal's opinion was insufficient to discount her medical opinion as a treating physician.

To begin, the ALJ accorded "little weight" to the opinion of Dr. Brooks-Kayal, asserting that her opinion is "inconsistent" with her own treatment notes. (R. 24.) However, the ALJ failed to explain *how* Dr. Brooks-Kayal's opinion was inconsistent with her treatment notes or point to any inconsistencies. *See Clifford v. Apfel*, 227 F. 3d 863, 871 (7th Cir. 2000) (finding that the ALJ did not provide any explanation for his belief that the claimant's activities were inconsistent with the treating physician's opinion and his failure to do so constitutes error). Without such a logical bridge, the Court cannot trace the path of the ALJ's reasoning.

Moreover, although the ALJ is entitled to not give Dr. Brooks-Kayal's opinion controlling weight, she must still address the factors listed in 20 C.F.R. § 404.1527. SSR 96-2p. SSR 92-2p states that treating source medical opinions like Dr. Brooks-Kayal's "are still entitled to deference and must be weighed using *all* of the factors provided in 20 C.F.R. § 404.1527." (*Id*) (emphasis added). Here, the ALJ failed to minimally address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of Dr. Brooks-Kayal's treating relationship with Claimant, the frequency of examination, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Brooks-Kayal had a relevant specialty. Accordingly, the ALJ impermissibly rejected Dr. Brooks-Kayal's opinion before engaging in the required discussion. Without the requisite "good reasons" for rejecting Dr. Brooks-Kayal's opinion, the ALJ committed reversible error, which requires remand.

**E. The ALJ improperly considered the Teacher Questionnaire.**

Claimant also argues that the ALJ erred by not properly considering the Teacher Questionnaire jointly submitted by Claimant's math teacher and school nurse. Under the Social Security Regulations, evaluations from school personnel are considered "other source" opinions. *See* SSR 06-3p. While other sources "cannot establish the existence of a medically determinable impairment," they are considered "valuable sources of evidence for assessing impairment severity and functioning." (*Id.*) "[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982); *see also* SSR ("[T]he Act requires us to consider all of the available evidence in the individual's case record in every case.") The Seventh Circuit has found that failure to discuss portions of teacher reports that were favorable to the claimant amounts to reversible error. *See Hopgood v. Astrue*, 578 F.3d 696, 700 (7th Cir. 2009); *see also Murphy v. Astrue*, 496 F.3d 630, 634-35 (7th Cir. 2007) (reversing the ALJ's failure to address school records contrary to his conclusion).

Here, although the ALJ mentioned the teacher's questionnaire at several points in her decision (R. 27, 29, 30, 31), she did not address portions of the questionnaire that were favorable to Claimant. For instance, the ALJ failed to discuss limitations noted in the Teacher Questionnaire in the second domain of attending and completing tasks, where seven of the thirteen areas were assessed as either serious or very serious problems. (R. 175.) Likewise, the ALJ did not recognize that ten of the thirteen areas in the third domain of interaction and relating with others were found to be serious or very serious problems. (R. 176.) Without mention of this contrary evidence, the Court cannot assess if and to what extent the ALJ considered this evidence in her

determination. The ALJ committed reversible error by ignoring the contradictory evidence. On the whole, the ALJ's errors here are particularly noteworthy given that the ALJ found that Claimant met the severity of one domain. This would mean that a similar finding with respect to only one other domain would have resulted in a finding of disability. The ALJ should take care to properly consider the teacher questionnaire on remand.

### F. The ALJ did not "play doctor" by basing her determination on a non-examining agency opinion.

Claimant next argues that the ALJ erred by formulating the functional equivalence analysis without guidance of any examining opinion. The Claimant asserts that the ALJ "has apparently succumbed to the temptation to play doctor by discounting all opinion evidence from examining and observing sources." (Claimant's Mem. at 15.) Claimant cites to the unpublished Seventh Circuit opinion, *Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010), for the proposition that the ALJ may not substitute her own lay judgment for opinions in the record. However, that is not what happened in this case. Here, the ALJ relied on the opinion of non-examining agency consultants, Drs. Wanstrath and Synstegard in formulating her functional equivalence analysis. (R. 25-26.) Nowhere in *Suide* does the court say that an ALJ cannot rely on a non-examining physician opinion. In fact, the Seventh Circuit has found that an ALJ "must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions . . ." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

So, while the Court disagrees with the general assertion that the ALJ "played doctor" when basing her opinion on non-examining physician opinions, as explained

13

above, the Court finds that the ALJ otherwise improperly weighed the opinion evidence of treating physician Dr. Brooks-Kayal, and improperly ignored contradictory evidence in the Teacher Questionnaire. Accordingly, the case must be remanded for further consideration, including a proper assessment of all of the evidence in the record.

## III. CONCLUSION

For the reasons stated above, Claimant's request for summary judgment is granted and the Commissioner's motion for summary judgment is denied. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order. It is so ordered.

_____

**Michael T. Mason**
**United States Magistrate Judge**

**Dated: February 23, 2017**